IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ANN M. STOCK, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Case No. 3:06-cv-215-DRH |
| | ) | |
| INTEGRATED HEALTH PLAN, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This matter is before the court on the Motion to Quash Subpoenas filed by Richard C. Coy, Coy Chiropractic Health Center, and Ann M. Stock ("Plaintiffs") on February 16, 2007 (Doc. 74), and the Motion to Quash Subpoena and Strike Deposition Notice filed by Plaintiffs on February 22, 2007 (Doc. 81). On March 5, 2007, the Court conducted a hearing on these motions. For the reasons set forth below, the Motion to Quash (Doc. 74) is **GRANTED**, and the Motion to Quash (Doc. 81) is **GRANTED**.

### BACKGROUND

This is a class action brought on behalf of numerous healthcare providers ("Plaintiffs") who agreed to join Integrated Health Plan's ("IHP") preferred provider network. The agreement entailed that Plaintiffs would supply healthcare services to patients in the network. Plaintiffs allege that IHP enticed them to join by promising to market the network only to insurance companies and vendors ("Payors") that offer financial incentives (e.g., low deductibles) to patients who use in-network providers. According to Plaintiffs' allegations, IHP represented that these insurance companies would steer new patients to Plaintiffs, thereby increasing their business volumes. In exchange, Plaintiffs were to provide medical services to patients at

discounted rates.  Plaintiffs allege that because IHP did not offer the network exclusively to insurance companies that provide financial incentives to patients, the increase in patient volume never occurred and Plaintiffs never received their benefit of the bargain.  In light of these averments, Plaintiffs allege breach of contract and breach of fiduciary duty.

DISCUSSION

*A. Factual Summary*

In their motions to quash, Plaintiffs object to three subpoenas that IHP served them, seeking to obtain deposition testimony and documents from past or current employees of The Lakin Law Firm ("LLF"), a firm that currently represents Plaintiffs in this lawsuit.  The crux of Plaintiffs' motions to quash is that the subpoenas are improper pursuant to Rule 45(c) in that they designate six topics that call for information that is either privileged or not reasonably calculated to lead to the discovery of admissible evidence in this lawsuit.  Those topics are reproduced verbatim below:

> (1)  All documents concerning any civil or criminal government investigations or cases relating to any alleged wrongdoing by The Lakin Law Firm, Bradley Lakin, or Thomas Lakin.

> (2)  All documents concerning any civil lawsuits filed against The Lakin Law Firm, Bradley Lakin, or Thomas Lakin between January 1, 2006, and the present.

> (3)  All documents concerning any bar or ethical investigation, complaint, action or sanctions, that has not been resolved prior to January 1, 2006, relating to any alleged wrongdoing by The Lakin Law Firm, Bradley Lakin, or Thomas Lakin.

> (4)  All documents concerning any attempts to terminate the agreement between The Lakin Law Firm and Freed & Weiss, LLC, or otherwise to alter the relationship between The Lakin Law Firm and Freed & Weiss, LLC.

> (5)  All communications with clients of The Lakin Law Firm, between December 1, 2006, and the present, regarding representation by Freed & Weiss, LLC.

2

(6)  All documents concerning the allegations set forth in the complaint in <u>Lakin Law Frim, P.C. v. Freed & Weiss, LLC</u>, No. 07CH9 (Madison County, Ill.).

Pl.'s Mt. to Quash Subpoenas (Doc. 74), Ex. A, *Schedule A*, p. 4.

In its opposition to the motions to quash, IHP asserts that the subpoenas do not seek privileged or irrelevant information, but instead seek information related to the "adequacy of counsel" provisions of Rule 23(g).  More specifically, IHP asserts that it is entitled to discovery on the questions of (1) whether LLF has the resources to effectively and adequately prosecute this class action without the cooperation and assistance of the law firm Freed & Weiss ("F&W"); (2) whether negative publicity and allegations of wrongdoing directed at LLF's former partner, Thomas Lakin, will prejudice the proposed class; and (3) whether statements made by Richard Burke, opining that LLF lacked sufficient resources to prosecute class actions, are accurate.[1] IHP asserts that these three queries will be satisfied if the Court allows it discovery to probe the six topics designated in the subpoenas.

In a reply to IHP's opposition, Plaintiffs reiterate that the data IHP seeks via the subpoenas are irrelevant to the lawsuit, call for the production of privileged material, and/or constitute a line of inquiry that only the Court may pursue under Rule 23(g), but that IHP may not pursue.

## B. Legal Standard

Rule 45 requires district courts to, upon motion, quash or modify a subpoena if it: (1) fails to allow a reasonable time for compliance; (2) requires the disclosure of privileged or other protected matter; (3) subjects a person to an undue burden; (4) requires the disclosure of trade

---

[1] Richard Burke filed a complaint in <u>Burke v. Lakin Law Firm, P.C., et al.</u>, No. 3:07-cv-00076 (S.D. Ill., Jan. 9, 2007), in which he opined that LLF lacks sufficient experienced and competent staff to prosecute the class action lawsuits it currently handles.

secrets or other confidential commercial information; or (5) requires the disclosure of an unretained expert's opinion. See Fed. R. Civ. P. 45(c)(3)(A); see also CSC Holdings, Inc. v. Redisi, 309 F.3d 988, 993 (7th Cir. 2002).

A subpoena will survive a motion to quash when it designates topics that are reasonably calculated to lead to admissible evidence. See Advisory Committee Note to the 1970 Amendment of Rule 45(d) ("The scope of production under a subpoena is the same as the scope for discovery generally under Rule 26."); 9A Wright, Miller & Cooper, Federal Practice and Procedure § 2459, at 44-45 (2d. ed. 1994) (explaining that the scope of production under a subpoena is coextensive with the limitations of scope prescribed in Rule 26(b)(1)).

Although the Seventh Circuit Court of Appeals has not explicitly ruled that district courts may quash or modify a subpoena for seeking information irrelevant to the merits of a case, it has long recognized that the courts have "wide discretion" in limiting the scope of discovery to topics of ultimate relevance. Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U. A., 657 F.2d 890, 902 (7th Cir. 1981); see also Continental Corp. v. Aetna Cas. & Sur. Co., 892 F.2d 540, 542 (7th Cir. 1989) (acknowledging a district court's discretion to quash a subpoena when it sought testimony deemed irrelevant to ongoing and future proceedings); Sabo v. Standard Oil Co. of Ind., 295 F.2d 893, 894 (7th Cir. 1961) (upholding a district court's decision to quash a subpoena when it sought information deemed irrelevant to the proceedings); Cf. Spiegel, Inc. v. F.T.C., 494 F.2d 59, 64 (7th Cir. 1974) (upholding a federal agency's decision to quash a subpoena when it sought irrelevant information that would not have influenced the agency's ultimate determination of liability); 5 Alba Conte and Herbert B. Newberg, Newberg on Class Actions § 15:30 (4th ed. 2002) ("Most courts recognize that far-

4

flung discovery on the adequacy of representation of the plaintiff and class counsel is usually unsuccessful because of the highly questionable relevance of the discovery details sought.").

## C. Legal Analysis

This Court's present task is to determine which, if any, of the topics designated in the subpoenas must be quashed because they seek privileged or irrelevant information.  Turning first to the question of whether the topics call for the disclosure of privileged information, the Court notes that although Plaintiffs assert privilege over some of the topics, they provide very little argumentation in support of that assertion in their motions to quash.  In fairness to Plaintiffs' position, the Court notes that the six topic designations call for such a broad range of information that virtually any document, privileged or not, possessed by LLF or Bradley Lakin could arguably be responsive.[2]  Put another way, the subpoena topics as currently drafted are too broad in scope for IHP to reasonably expect a fully responsive production.  At the hearing held on these motions, neither of the parties proposed a means of narrowing those topics to alleviate Plaintiffs' concerns regarding privilege while still allowing IHP to obtain non-privileged responses within the scope of Rule 45.  Nonetheless, in the absence of Plaintiffs' averments as to how these six topics specifically invade the privilege owed to certain classes of documents, an effort on the part of this Court at this time to evaluate whether the topics necessarily call for privilege would be, at best, premature.[3]  Because the designated topics seek such a broad range

---

[2] See Pl.'s Mt. to Quash Subpoenas (Doc. 74), Ex. A, *Schedule A* (seeking "all documents concerning" government investigations, civil lawsuits, ethical investigations, terminated agreements, and also seeking "all [LLF's] communications with clients" regarding F&W since December 2006).

[3] Certainly, the "burden of establishing the existence of a privilege rests on the party asserting it," thus this Court cannot feasibly conclude on the basis of Plaintiffs' blank assertions that any of the designated topics must be quashed, or even modified, pursuant to Rule 45(c)(3)(A). Matter of Walsh, 623 F.2d 489, 493 (7th Cir. 1980); see also United States v. BDO Seidman, 337 F.3d 802, 811 (7th Cir. 2003).

5

of documents, and because Plaintiffs did not meet their burden of demonstrating which of the topics necessarily entail the disclosure of privileged information, the Court declines to quash or modify any of the topics on the grounds that they defy a privilege. See Matter of Walsh, supra, at 493.

The second question of whether the subpoenas seek irrelevant information must begin with an initial determination of whether the information sought could reasonably lead to the discovery of admissible evidence. Rule 23(g) sets forth mandatory and optional factors for a court to consider in making an appointment of class counsel. The Rule generally mandates that a court must find prior to the appointment that the attorney will "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B). The Rule then sets forth factors that a court "must consider" in making class appointments, all of which are designed to test whether the attorney has sufficient legal ability, experience, and resources to prosecute the action. Id. at 23(g)(1)(C)(i) (emphasis added). The Rule also holds that a court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Id. at 23(g)(1)(C)(ii) (emphasis added).

Plaintiffs oppose IHP taking depositions and examining documents for the purpose of challenging LLF's adequacy as class counsel. They cite Eggleston, supra, at 895, for the proposition that discovery of this sort is disfavored, if not prohibited, in the Seventh Circuit. Secondly, Plaintiffs assert that the Court's allowance of discovery on this question would be an improper delegation of the Court's Rule 23(g) power to inquire into what it "may," as contrasted with the Court's presumptively delegable power to inquire into what it "must." Plaintiffs are mistaken on both points.

6

As an initial matter, although <u>Eggleston</u> expressed skepticism as to the benevolence of a defendant who challenges an application for class counsel, it did not hold that a defendant is not allowed discovery for making such a challenge. <u>Id</u>. (drawing an analogy between a defendant making an adequacy of representation challenge and "permitting a fox, although with a pious countenance, to take charge of the chicken house.").  To the contrary, <u>Eggleston</u> expressly acknowledged that courts must allow a degree of pre-certification discovery "to aid making the necessary class determinations." <u>Id</u>.  Further, this Court is aware of no binding authority, apart from the limitations set forth in Rules 26(b) and 45(d), limiting its discretion to permit discovery on key inquiries related to whether the Court should certify a proposed class. <u>Id</u>. at 902 ("The district court has wide discretion within the rules to determine the manner and course of discovery."); <u>Leffler v. Meer</u>, 60 F.3d 369, 374 (7th Cir. 1995) ("District courts enjoy extremely broad discretion in controlling discovery.").  Moreover, courts within the Seventh Circuit often rely upon facts presented by defendants in evaluating class counsel's ability to fairly and adequately protect the interests of the class. <u>See</u>, <u>e.g.</u>, <u>Greisz v. Household Bank, N.A.</u>, 176 F.3d 1012, 1013 (7th Cir. 1999); <u>Frietsch v. Refco, Inc.</u>, 1994 WL 10014, at *9 (N.D. Ill. 1994) (considering a number of issues the defendants raised about the alleged unethical behavior of an applicant for class counsel before reaching a decision on counsel's adequacy); <u>Sec'y of Labor v. Fitzsimmons</u>, 805 F.2d 682, 697 (7th Cir. 1986) (acknowledging the right of the defendant to challenge the adequacy of class counsel.); <u>Swift v. First USA Bank</u>, 1999 WL 1212561, at *5 (N.D. Ill. 1999) (reviewing a retainer agreement that the defendant offered to refute class counsel's ability to fairly protect the class interests).  The foregoing case law illustrates that courts are allotted sufficient discretion to allow defendants discovery on any consideration, mandatory or optional, pertinent to an inquiry made under Rule 23(g).  Having determined that it

7

has broad discretion to allow discovery bearing on adequacy of representation, the Court now turns to Plaintiffs' argument that the topics designated in the subpoenas are irrelevant to LLF's ability to represent the class, and thus not likely to lead to the discovery of admissible evidence.

The six topics designated in the subpoenas ostensibly seek information about whether LLF is adequately positioned to prosecute this class action in the wake of allegations of wrongdoing directed toward one of its former partners, and whether it retained adequate resources and experience to prosecute the action after it allegedly broke ties with F&W and Richard Burke.

Of the six topics designated, topics 1, 2, and 3 relate to the negative press and details of civil and criminal investigations regarding the conduct of LLF's former law partner, Thomas Lakin. IHP asserts that it should be allowed to investigate these three topics so that it can aid the Court in determining whether the negative publicity could prejudice the proposed class. Plaintiffs refute the notion that negative press directed at a former partner could prejudice the interests of the class, adding that since the bad press began, LLF has continued to vigorously prosecute class actions with marked success. Topics 4 and 5 relate to the alleged rift between LLF and F&W. IHP asserts that discovery on the nature and circumstances of that rift will aid the Court in determining whether LLF can prosecute the action without F&W's cooperation and assistance. Topic 6 relates to statements Richard Burke made after his sudden departure from LLF, opining that the firm lacked sufficient experienced and competent staff to prosecute the class actions it currently handles. IHP asserts that Mr. Burke's statements raise serious questions about LLF's ability to adequately represent the class and that the Court should allow discovery to learn the validity of those statements. Plaintiffs respond that the Court should be skeptical of Mr. Burke's credibility in making those statements, especially against the backdrop of his

ensuing litigation against LLF.

After taking into considerations all the foregoing averments, the Court concludes that all of the six topics should be quashed, along with the depositions notices directed at Mr. Lakin and LLF, because none of those topics are sufficiently probative of relevant facts to aid the Court in determining whether LLF will adequately represent the proposed class here.

With respect to topics 1, 2, and 3, IHP has failed to persuade the Court that the negative press directed at a former partner of LLF redounds an appreciable risk of prejudice to the members of the class.  Likewise, the Court is not persuaded that the negative press coverage of one of LLF's former law partners, however defaming, diminishes any of its current lawyers' ability to continue prosecuting this class action.  Moreover, IHP has presented no case law wherein an application for class counsel was denied due to a law firm receiving negative press regarding alleged wrongdoing.  Accordingly, topics 1, 2, and 3 are hereby **QUASHED**.

Similarly, with respect to topics 4 and 5, the Court does not believe that LLF's alleged disassociation from F&W necessarily disables it in representing the interests of the class.  Courts in the Seventh Circuit, including this Court, evaluate applicants for class counsel on the basis of (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions; and (3) the resources counsel will commit to representing the class. See Westefer v. Snyder, 2006 WL 2639972, at *11 (S.D. Ill. 2006) (appointing counsel pursuant to the provisions of Rule 23(g)); Hernandez v. Chase Bank USA, N.A., 2006 WL 3782900, at *5 (N.D. Ill. 2006) (same).   The Court's docket currently reflects that nine attorneys are representing the proposed class, five of which are employed by LLF. According to IHP's averments, three of those attorneys, Richard Burke, Paul M. Weiss, and Jonathan B. Piper, are likely to withdraw from or otherwise not participate in the further

prosecution of the action.  Assuming for the sake of argument that this prediction is accurate, the class will thereafter be represented by the remaining six attorneys.  One of the remaining LLF lawyers, Jeffrey A. J. Millar, has submitted an affidavit in support of his firm's appointment as class counsel.  In that affidavit, Mr. Millar declares that LLF has notable experience in prosecuting class actions, attaching a list of 13 successful class certifications brought by his firm. He further declares that his firm has settled various class actions, attaching a list of 22 cases in which his firm obtained settlements (ranging from $400,000 to $100,000,000) on behalf of the respective classes it represented in those cases.  In addition to Mr. Millar's declarations, the Court notes that he has done substantial work in favor of the proposed class, participating in numerous teleconferences held by the Court and filing documents in favor of class certification.

Taking into consideration Mr. Millar's declarations and the Court's observation of his vigorous prosecution of the class action, no reason exists for doubting LLF's ability to continue prosecuting this case – even if the withdrawal of the three aforementioned attorneys is all but certain to occur.  The combined experience of Mr. Millar and LLF color each of the three considerations announced in Westefer and Hernandez, and details regarding LLF's sudden disassociation from F&W would have little probative value in rebutting the facts LLF has already presented to meet those considerations.  Likewise, the Court is aware of no case law in the Seventh Circuit finding a law firm inadequate to represent a class because of disagreements with its co-counsel or internal personnel changes.  Accordingly, the Court finds that topics 4 and 5 are irrelevant to the Court's inquiry under Rule 23(g).  Topics 4 and 5 are hereby **QUASHED**.

No discovery will be allowed with respect to topic 6 because Mr. Burke's opinion about LLF's ability to prosecute all the class actions it handles is far too vague to impact the narrower query before this Court.  More specifically, it is not this Court's task to determine whether LLF's

class action practice is efficiently staffed overall.  Instead, the Court must apply the factors set forth in <u>Westefer</u> and <u>Hernandez</u> in determining whether LLF will adequately represent the interests of the proposed class in this case.  In light of the affidavits submitted by LLF, the activities of Mr. Millar thus far, and the number of LLF attorneys having filed an appearance in this case, the Court is convinced that <u>this</u> class action lawsuit is adequately staffed for the purposes of Rule 23(g).  No additional discovery on the question is needed to sustain this finding, and no conceivable discovery pursuant to topic 6 would suffice in persuading the Court to second-guess its finding.  Accordingly, topic 6 is hereby **QUASHED** along with the deposition notices directed at Bradley Lakin and LLF.

Further, the Court believes it would be improper and highly anomalous to allow IHP to depose Mr. Burke on the basis of his statements in his lawsuit against LLF because (1) many of those statements appear to be extraneous commentary in that they are not clearly related to the elements necessary for establishing his claims there;[4] (2) his statements there are insufficient to rebut his prior representations in this case that "[p]laintiffs and counsel have the necessary financial resources to adequately and vigorously litigate this class action." Pl.'s Complaint (Doc. 2), p. 8; (3) requiring Plaintiffs to defend a deposition of their former counsel (now an opponent of the class) would impose an undue burden upon the class without even the consolation that the proposed testimony could feasibly enhance its interests in maintaining adequate counsel; and (4) his testimony offers no prospect of aiding the Court in making the necessary class determination before it. <u>See</u> <u>Eggleston</u>, <u>supra</u>, at 895.  Thus, the Court hereby **QUASHES** the deposition notice directed at Mr. Burke.

---

[4] LLF has filed a motion to strike in Mr. Burke's lawsuit, averring that much of his commentary is immaterial pursuant to Rule 12(f).

## CONCLUSION

For the reasons outlined above, the Motion to Quash (Doc. 74) is **GRANTED**, and the

Motion to Quash (Doc. 81) is **GRANTED**.

**DATED: March 15, 2007**

s/ *Donald G. Wilkerson*
**DONALD G. WILKERSON**
**United States Magistrate Judge**

12